**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **VISTA PEAK VENTURES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **NANJING CEC PANDA LCD** | § | |
| **TECHNOLOGY CO., LTD.,** | § | **CIVIL ACTION NO. _____** |
| **NANJING ELECTRONICS** | § | |
| **INFORMATION INDUSTRIAL** | § | |
| **CORPORATION, CEC PANDA FLAT** | § | |
| **PANEL DISPLAY TECHNOLOGY CO.,** | § | |
| **LTD., TPV TECHNOLOGY LIMITED,** | § | |
| **TOP VICTORY INTERNATIONAL** | § | |
| **LIMITED, TOP VICTORY** | § | |
| **INVESTMENTS, LTD., TPV DISPLAY** | § | |
| **TECHNOLOGY (WUHAN) CO., TPV** | § | |
| **DISPLAY TECHNOLOGY (BEIHAI)** | § | |
| **CO., TPV ELECTRONICS (FUJIAN)** | § | |
| **CO., LTD., and TPV TECHNOLOGY** | § | |
| **(NINGBO) CO., LTD.** | § | |
| **Defendants.** | | |

**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Vista Peak Ventures, LLC ("VPV") files this Complaint against Defendants Nanjing CEC Panda LCD Technology Co., Ltd. ("Panda LCD"), Nanjing Electronics Information Industrial Corporation ("CEC Panda"), CEC Panda Flat Panel Display Technology Co., Ltd. ("Panda FPD"), TPV Technology Limited, ("TPV"), Top Victory Investments, Ltd. ("Top Victory"), and Top Victory International Limited ("Top Victory Int'l"), TPV Display Technology (Wuhan) Co. ("TPV Wuhan"), TPV Display Technology (Beihai) Co. ("TPV Beihai"), TPV Electronics (Fujian) Co., Ltd. ("TPV Fujian"), and TPV Technology (Ningbo) Co., Ltd. ("TPV Ningbo") for infringement of U.S. Patent No. 6,404,474 ("the '474 patent"), U.S. Patent No.

6,657,699 ("the '699 patent"), U.S. Patent No. 7,009,673 ("the '673 patent"), U.S. Patent No. 6,078,375 ("the '375 patent"), U.S. Patent No. 6,646,691 ("the '691 patent"), and U.S. Patent No. 7,446,825 ("the '825 patent"), collectively, the "Asserted Patents." Defendants Panda LCD, CEC Panda, Panda FPD, TPV, Top Victory, and Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo are collectively referred to herein as "Defendants."

## THE PARTIES AND RELATED BACKGROUND

1.    Vista Peak Ventures, LLC is a Texas limited liability company, located at 1400 Preston Rd, Suite 472, Plano, TX 75093.

2.    Upon information and belief, Defendant Panda LCD is a company established in 2009 in the People's Republic of China ("PRC") with limited liability and is a non-wholly owned subsidiary of China Electronics Corporation ("CEC"). Defendant Panda LCD has its principal place of business located at 3rd Ring Rd, Qixia, Nanjing, Jiangsu, China. CEC is a Chinese state-owned company established in 1989 to operate and manage state-owned assets. *See About CEC*, CHINA ELECTRONICS CORPORATION, http://en.cec.com.cn/jtjj/list/index_1.html. In 2000, CEC became a "key state-owned enterprise directly managed by the central government." *Id*. Since that time, CEC has acquired several electronics companies, including the Panda Electronics Group in 2007 and TPV Technology Co., Ltd. in 2009. *Id*. Currently, CEC has about 20 wholly-owned and controlled secondary enterprises and about 14 listed companies. *Id*.; *see also Subsidiaries*, CHINA ELECTRONICS CORPORATION, http://en.cec.com.cn/cyqy/list/index_1.html. CEC and its subsidiaries (collectively referred to as the "CEC Group") are engaged in the business of "network security, new display, integrated circuits, high-tech electronics, information services and other electronic information industry fields featuring national strategy, foundation and guidance," including manufacturing and supplying of "LCD products," such as TVs and computer monitors. *See About CEC*, CHINA ELECTRONICS CORPORATION, http://en.cec.com.cn/jtjj/list/index_1.html.

3.      Upon information and belief, Defendant Nanjing Electronics Information Industrial Corporation ("CEC Panda") is a state-owned limited liability company established in the PRC. *See 2019 Interim Report*, NANJING PANDA ELECTRONICS COMPANY LIMITED, p. 2, http://www.panda.cn/uploadfiles/2019/09/201909251013301330.pdf (providing name of the company as "南京中電熊猫信息產業集團有限公司" which according to Word's translator translates to "Nanjing CLP Panda Information Industry Group Co., Ltd."). CEC Panda has its principal place of business located in the PRC at 20th - 23rd Floor, China Power Information Building, 37 Jianning Road, Nanjing, China, Post Code: 210037. CEC Panda "is principally engaged in three major sectors, including new displays, electronic devices and modern services, which cover industries such as display devices, high-tech electronic equipment, industrial automation system equipment, transport electronic system equipment, digital home electrical appliances, components, trading and services." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp.                                                                                                      9-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/20180607164701000013167990_en .pdf. Panda LCD is 16.75% owned by CEC and 39.36% owned by CEC Panda. CEC also owns about 70% of CEC Panda.

4.      Upon information and belief, Defendant CEC Panda Flat Panel Display Technology Co., Ltd. ("Panda FPD") is a limited liability company formed under the laws of the PRC in 2012 as a joint venture between Defendant Panda LCD and Defendant Top Victory Investments, Ltd. ("Top Victory"). Defendant Panda FPD has its principal place of business located at 3rd Ring Rd, Qixia, Nanjing, Jiangsu, China, and is partly owned by shareholders CEC, CEC Panda, and Nanjing Huadong Electronics Information & Technology Company Limited

("Nanjing Huadong"), which is the majority shareholder. Nanjing Huadong is a company established in the PRC with limited liability and is a non-wholly owned subsidiary of CEC.

5.      Upon information and belief, Defendant TPV Technology Limited ("TPV") is a corporation existing under the laws of Bermuda, with its principal place of business at Units 1208-16, 12/F, C-Bons International Center, 108 Wai Yip Street, Kwun Tong, Kowloon, Hong Kong. TPV is a publicly-traded company whose shares are listed primarily on the Stock Exchange of Hong Kong Limited and secondarily listed on the Singapore Exchange Limited. CEC is the ultimate controlling shareholder of TPV. *See Annual Report 2018*, TPV TECHNOLOGY LIMITED, p. 26, http://api.aconnect.com.hk/Attachment/37735. Upon information and belief, TPV is an original design manufacturer of TVs and monitors and also distributes its own brands "AOC" and "Envision." *See* Group Profile, TPV Technology, http://www.tpv-tech.com/en/GroupProfile.aspx (last visited Mar. 12, 2020).

6.      Upon information and belief, Defendant Top Victory Investments, Ltd. ("Top Victory") is a corporation existing under the laws of Hong Kong, with its principal place of business at Rm 1023, 10th Fl, Suite 1023 Harbour City, 5 Canton Road, Tsim Sha Tsui Hong Kong. Top Victory is an indirectly wholly-owned subsidiary of TPV. *See Annual Report 2018*, TPV TECHNOLOGY LIMITED, p. 131, http://api.aconnect.com.hk/Attachment/37735. Upon information and belief, Top Victory is in the business of distributing TVs and monitors, including under the AOC and Envision brands.

7.      Upon information and belief, Defendant Top Victory International Limited ("Top Victory Int'l") is a corporation organized under the laws of the British Virgin Islands, with its principal place of business located at C/O Offshore Incorporations Centre, Road Town, Tortola, British Virgin Islands. Top Victory Int'l is a directly and wholly-owned subsidiary of TPV. *See*

*Annual      Report      2018*,      TPV      TECHNOLOGY      LIMITED,      p.      131,

http://api.aconnect.com.hk/Attachment/37735. Upon information and belief, Top Victory Int'l is

in the business of distributing TVs and monitors, including under the AOC and Envision brands.

8.     TPV Display Technology (Wuhan) Co. ("TPV Wuhan") is a company organized

under the laws of PRC, with its principal place of business at Unique No. 11 of Zhuankou

Development, District of Economic Technological Development Zone, Wuhan City, China. It is a

subsidiary of TPV Technology Limited. Upon information and belief, TPV Wuhan is in the

business of manufacturing and distributing display devices, such as monitors and digital televisions

under at least the Envision and AOC brands.

9.     TPV Display Technology (Beihai) Co. ("TPV Beihai") is a company organized

under the laws of PRC, with its principal place of business at Beihai Industrial Park, Taiwan Road,

northeast of Jilin Road (inside China Electronics Beihai Industrial Park) Beihai; Guangxi; Postal

Code: 536000. Upon information and belief, it is a subsidiary of TPV Technology Limited. Upon

information and belief, TPV Beihai is in the business of manufacturing and distributing display

devices, such as monitors and digital televisions under at least the Envision and AOC brands.

10.     TPV Electronics (Fujian) Co., Ltd. ("TPV Fujian") is a company organized under

the laws of PRC, with its principal place of business at Shangzheng Yuanhong Road, Fuqing City,

Fujian Province, China. Upon information and belief, it is a subsidiary of TPV Technology

Limited. Upon information and belief, TPV Fujian is in the business of manufacturing and

distributing display devices, such as monitors and digital televisions under at least Envision and

AOC brands.

11.     TPV Technology (Ningbo) Co., Ltd. ("TPV Ningbo") is a company organized

under the laws of PRC, with its principal place of business at Bldg 6 No.12 Chuangye Rd Free

Beilun District Zj 315800 China 86815666. TPV Ningbo is a subsidiary of TPV Technology Limited. Upon information and belief, TPV Ningbo is in the business of manufacturing and distributing display devices, such as monitors and digital televisions under at least Envision and AOC brands.

12.     Upon information and belief, TPV has wholly-owned and controlled subsidiaries operating and doing business in the United States. *See Annual Report 2018*, TPV TECHNOLOGY LIMITED, pp. 131-32, http://api.aconnect.com.hk/Attachment/37735. These subsidiaries include at least Trend Smart America, Ltd. ("Trend Smart"), which is a California corporation with its principal place of business at 2 S. Pointe Dr., Lake Forest, California, and TPV International (USA), Inc. ("TPV USA"). TPV USA is a California corporation registered to do business in Texas, with its principal place of business at 3737 Executive Center Dr. #261, Austin, Texas. TPV USA is indirectly wholly-owned by TPV.

13.     Upon information and belief, Envision Peripherals, Inc. ("Envision," a California corporation) operates in the United States on behalf of TPV and its subsidiaries to bring to distributors, customers, and end user consumers "AOC [branded] monitors in North America." *See Envision Peripherals, Inc.*, LINKEDIN, https://www.linkedin.com/company/envision-peripherals-inc/about/. Envision identifies itself on LinkedIn as a "variable interest entity of TPV." TPV has also identified Envision as an "associate" of TPV in its annual reports.

14.     TPV further lists Defendant Top Victory Int'l as a North American subsidiary of TPV. In 1999, AOC International assigned the U.S. Trademark Registration of the mark "AOC" to Top Victory Int'l.

15.     TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Trend Smart, TPV USA, and Envision, along other subsidiaries and/or associates of TPV,

operate collectively as the "TPV Group" to principally engage in the "manufacture and sales of personal computer monitors and televisions globally….[including operating under] its own brands 'AOC', 'Envision,'" among other brands. *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV Technology Limited June 8, 2018, p. 29, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010001316779 0_en.pdf.

16.    In April of 2012, Defendants Panda LCD and Top Victory established a joint venture named "CEC Panda Flat Panel Display Technology Co., Ltd." (the "Joint Venture," also referred to herein as Defendant Panda FPD), to manufacture and sell TFT-LCD panels, color filters, and LCD modules (the "Panda LCD Products"), to conduct research and development related to the Panda LCD Products, and to provide after-sales and customer-related services for the Joint Venture. *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 6-8, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010001316779 0_en.pdf. Panda LCD manufactures and provides the Panda LCD Products via Panda FPD to Top Victory pursuant to a "Panda LCD Procurement Agreement." *Id.*

17.    Upon information and belief, the listing rules of the Hong Kong stock exchange require Defendant TPV to disclose certain transactions between Defendant Top Victory and Defendant Panda LCD. Under the listing rules, those parties are considered "connected persons," because Panda LCD is a subsidiary of CEC and CEC is the ultimate controlling shareholder of TPV, Top Victory's parent. Under the listing rules, therefore, sales of the Panda LCD Products to Top Victory pursuant to the Panda LCD Procurement Agreement are regulated as "connected

transactions," indicating that such sales are for the mutual benefit of the transacting parties. Pursuant to a supplemental investment agreement, TPV reported that all the rights and obligations of Panda LCD in the Joint Venture were taken up by Defendant Nanjing Electronics Information Industrial Corporation ("CEC Panda"). In May of 2018, Top Victory exercised an option (the "Put Option") to require CEC Panda (as the successor of Panda LCD in the Joint Venture) to acquire Top Victory's stake in the Joint Venture.

18.     Despite divesting its interest in the Joint Venture in 2018, TPV reports that Panda LCD continues to supply the Panda LCD Products to Top Victory pursuant to a renewal of the Panda LCD Procurement Agreement, which is effective at least through December of 2020. *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, p. 32, *available at* http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010001316 7990_en .pdf. Top Victory distributes televisions and monitors incorporating TFT-LCD panels manufactured by Panda LCD in the United States, including the Eastern District of Texas. Top Victory distributes and sells such products under at least its "AOC" brand, which are sold in many online and retail stores in the United States. By virtue of connected transactions with Top Victory, Defendants do business in the State of Texas and in the Eastern District of Texas.

19.     Upon information and belief, CEC is the ultimate controlling shareholder of Panda LCD. Panda LCD is "principally engaged in the manufacture of LCD panels and displays," and is part of a related group of parent companies, subsidiaries, and close associates (the "Panda Group") which includes CEC Panda and Panda FPD and operates under the umbrella of Panda Electronics Group Limited ("PEGL"). PEGL is the controlling shareholder of Panda LCD, and NEICC holds 100% equity interest of PEGL.

20.     In addition to providing monitors and TVs in the U.S. under the AOC and Envision brands, the Panda Group including Defendants Panda LCD and CEC Panda, upon information and belief, also operates in the U.S. via its associate, business partner, and/or customer Sceptre, Inc. ("Sceptre"), which is a California corporation with its principal place of business 16800 Gale Ave City of Industry, CA 91745. Sceptre provides wholesale distribution of the Panda Groups' LCD panels and displays in the U.S., and such products are incorporated into Sceptre-branded monitors and TVs provided to U.S. customers and end user consumers in the U.S.

21.     Upon information and belief, Defendants Panda LCD and CEC Panda operate in the U.S., as part of the Panda Group, via at least its business partner and/or customer Curtis International Ltd. (a Canadian company, "Curtis"). Curtis manufactures, distributes, and sells consumer electronic products, including TVs and monitors utilizing TFT-LCDs, in the United States. *See Curtis International Ltd*, LINKEDIN, https://www.linkedin.com/company/curtis-international-ltd. Curtis' TVs and monitors are marketed under at least the "RCA" brand in the U.S. *Id*. These RCA-branded products incorporate LCD products manufactured and designed for Curtis by Defendants Panda LCD and CEC Panda. These RCA-branded products also incorporate liquid crystal modules (LCMs) manufactured and designed by Sichuan Changhong Electric Co., Ltd. and Guangdong Changhong Electronics Co., Ltd. (jointly referred to as "Changhong") and/or their parent and subsidiary companies. Defendants Panda LCD and CEC Panda manufacture, import, distribute, sell, offer to sale RCA-branded TVs that incorporate Defendants' LCD products and Changhong's LCM products to and for Curtis as part of agreements, partnerships, and/or customer relationship between Defendants Panda LCD and CEC Panda and Curtis. *See Our Products*, CURTIS INTERNATIONAL LTD, https://www.curtisint.com/products/. Curtis provides wholesale distribution of Defendants' Panda LCD and CEC Panda LCD panels and displays in the

U.S., and such products are incorporated into RCA-branded monitors and TVs provided to U.S. customers and end user consumers in the U.S.

22.     Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' LCD products with distributors, associates, business partners, and customers operating in and maintaining a significant business presence in the U.S., such as Envision, Curtis, and Sceptre and/or TPV's U.S.-based subsidiaries TPV USA and Trend Smart, Defendants do business in the U.S., the state of Texas, and in the Eastern District of Texas.

## JURISDICTION AND VENUE

23.     This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

24.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

25.     Upon information and belief, Defendant Panda LCD is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, Panda LCD operates within the CEC Group to manufacture and supply LCD products such as TVs and computer monitors under at least the AOC, Envision, RCA, and Sceptre brands for import, distribution, and sale in the U.S. market.

26.     This Court has personal jurisdiction over Panda LCD, directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, business partners, distributors, importers, customers, subsidiaries, and/or consumers, such as Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, Sceptre, Curtis, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA. Panda LCD, via at least the Joint Venture and other connected transactions with Defendants in the TPV Group and via the activities of U.S.-based Sceptre, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV Technology and its subsidiaries and associates. Panda LCD imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over Panda LCD would not offend traditional notions of fair play and substantial justice.

27.     In the alternative, the Court has personal jurisdiction over Panda LCD under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Panda LCD is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Panda LCD is consistent with the U.S. Constitution.

28.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Panda LCD is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC*

*Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

29.     Upon information and belief, Panda LCD has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

30.     Upon information and belief, Defendant CEC Panda is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, CEC Panda operates within the CEC Group to manufacture and supply LCD products such as TVs and computer monitors under at least the AOC, Envision, RCA, and Sceptre brands for import, distribution, and sale in the U.S. market.

31.     This Court has personal jurisdiction over Defendant CEC Panda, directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, business partners, distributors, importers, customers, subsidiaries, and/or consumers, such as TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, Sceptre, Curtis, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA, because CEC Panda, via at least its interest and participation in the Joint Venture and other connected transactions with Defendants in the TPV Group and via the activities of U.S.-based

Sceptre, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV Technology and its subsidiaries and associates. CEC Panda imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over CEC Panda would not offend traditional notions of fair play and substantial justice.

32.     In the alternative, the Court has personal jurisdiction over CEC Panda under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, CEC Panda is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over CEC Panda is consistent with the U.S. Constitution.

33.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, CEC Panda is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

34.     Upon information and belief, CEC Panda has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

35.     Upon information and belief, Defendant Panda FPD is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing

goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, Panda FPD operates within the CEC Group to manufacture and supply LCD products such as TVs and computer monitors under at least the AOC and Envision brands for import, distribution, and sale in the U.S. market.

36.     This Court has personal jurisdiction over Defendant Panda FPD, directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers, such as TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA, because Panda FPD, via at least its interest and participation in the Joint Venture and other connected transactions with Defendants in the TPV Group, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV Technology and its subsidiaries and associates. Panda FPD imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over Panda FPD would not offend traditional notions of fair play and substantial justice.

37.     In the alternative, the Court has personal jurisdiction over Panda FPD under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise

under federal law, Panda FPD is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Panda FPD is consistent with the U.S. Constitution.

38.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Panda FPD is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

39.     Upon information and belief, Panda FPD has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

40.     Upon information and belief, Defendant TPV is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, TPV controls and operates within the TPV Group to manufacture and supply LCD products such as TVs and computer monitors for the CEC Group, which provides these products under at least the AOC and Envision brands for import, distribution, and sale in the U.S. market.

41.     This Court has personal jurisdiction over Defendant TPV directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers, such as Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, and TPV's wholly-owned U.S.-based

subsidiaries Trend Smart and TPV USA, because TPV via at least its interest and participation in the Joint Venture and other connected transactions with the Defendants in the CEC Group, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV and its subsidiaries and associates. TPV imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over TPV would not offend traditional notions of fair play and substantial justice.

42.     In the alternative, the Court has personal jurisdiction over TPV under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, TPV is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over TPV is consistent with the U.S. Constitution.

43.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, TPV is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

44.     Upon information and belief, TPV has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

45.     Upon information and belief, Defendant Top Victory Int'l is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at

least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, Top Victory Int'l operates within the TPV Group to manufacture and supply LCD products such as TVs and computer monitors for the CEC Group, which provides these products under at least the AOC and Envision brands for import, distribution, and sale in the U.S. market.

46.     This Court has personal jurisdiction over Defendant Top Victory Int'l directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers, such as TPV, Top Victory, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA, because Top Victory Int'l via at least its interest and participation in the Joint Venture and other connected transactions with Defendants in the CEC Group, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and test outside the U.S. by TPV and its subsidiaries and associates. Top Victory Int'l imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over Top Victory Int'l would not offend traditional notions of fair play and substantial justice.

47.     In the alternative, the Court has personal jurisdiction over Top Victory Int'l under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Top Victory Int'l is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Top Victory Int'l is consistent with the U.S. Constitution.

48.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Top Victory Int'l is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

49.     Upon information and belief, Top Victory Int'l has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

50.     Upon information and belief, Defendant Top Victory is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its own infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers. For example, Top Victory operates within the TPV Group to manufacture and supply LCD products such as TVs and computer monitors for the CEC Group, which provides these products under at least the AOC and Envision brands for import, distribution, and sale in the U.S. market.

51.     This Court has personal jurisdiction over Defendant Top Victory directly or through alter egos, intermediaries, connected persons, joint venture parties, agents, associates, distributors, importers, customers, subsidiaries, and/or consumers, such as TPV, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, Envision, and TPV's wholly-owned U.S.-based subsidiaries Trend Smart and TPV USA, because Top Victory via at least its interest and participation in the Joint Venture and other connected transactions with Defendants in the CEC Group, has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States giving rise to this action and/or has established minimum contacts with Texas. Upon information and belief, the LCD products accused of infringing the Asserted Patents are manufactured, assembled, and/or packaged and tested outside the U.S. by TPV and its subsidiaries and associates. Top Victory imports the accused LCD products into the U.S., distributes such products in the U.S., offers to sell such products in the U.S., and/or sells them in the U.S., including selling them prior to importation. Personal jurisdiction, therefore, over Top Victory would not offend traditional notions of fair play and substantial justice.

52.     In the alternative, the Court has personal jurisdiction over Top Victory under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal law, Top Victory is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Top Victory is consistent with the U.S. Constitution.

53.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, Top Victory is not a resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3).

54.     Upon information and belief, Top Victory has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

55.     Upon information and belief, Defendants along with their parents, subsidiaries, close associates and other related companies, including business partners, distributors and customers of Defendants having a significant U.S. business presence, including Trend Smart, TPV USA, and Sceptre have operated as agents of one another and vicariously as arms of the same business group to work in concert together and enter into agreements that are nearer than arm's length to conduct business in the United States, including in Texas and this judicial district. *See Trois v. Apple Tree Auction Center, Incorporated*, 882 F.3d 485, 490 (5th Cir. 2018) ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state…."); *see also Cephalon, Inc. v. Watson Pharmaceuticals, Inc.*, 629 F.Supp.2d 338, 348 (D. Del. 2009) ("The agency theory may be applied not only to parents and subsidiaries, but also to companies that are 'two arms of the same business group,' operate in concert with each other, and enter into agreements with each other that are nearer than arm's length.").

56.     Upon information and belief, Defendants along with their parents, subsidiaries, and other related companies (i.e., associates, business partners, distributors and customers which have a significant business presence in the U.S.) engaged and continue to engage in a concerted effort to import, distribute, sell, offer to sell, and use infringing products in the United States, including monitors and TVs marketed under the AOC, Envision, RCA, and Scepter brands. For example, since at least 2012, Defendants in the Panda Group along with their parents, subsidiaries, and other related companies have carried out a series of connected transactions with the TPV Group in furtherance of its mutual business interests and goals, including, but not limited to, 1) establishing

the Joint Venture with Top Victory to manufacture and sell the Panda LCD Products in the United

States; 2) entering into a "Panda LCD Procurement Agreement" and subsequent with Top Victory

for the purchase of "LCD Panels and related products"; and 3) continuing to supply the TPV Group

with LCD panels from other factories operated by the Panda LCD Group. *See Discloseable and*

*Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV Technology

Limited,            June            8,            2018,            pp.            6-8,            29,

http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010001316790_en

.pdf.

57.       Defendants have placed and continues to place into the stream of commerce using

established distribution channels infringing products with the knowledge and understanding that

such products are, will be, and continue to be sold, offered for sale, and/or imported into this

judicial district and the State of Texas. For example, TPV (Top Victory's parent) touts that its sales

revenue from the North American market was 2.1 billion USD in 2018 and 2.3 billion USD in

2017, which was about one-quarter of its worldwide sales revenue. *See Annual Report 2018*, TPV

Technology Limited, p. 118, http://api.aconnect.com.hk/Attachment/37735. Defendants TPV,

Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating

as part of the TPV Group, directly and via their U.S. based subsidiaries and associates, have

imported, offered for sale, advertised, and sold TPV products including AOC monitors, such as

model nos. 27B1H, utilizing TPV LCD panels such as TPM270WF1. As part of the Joint Venture

and other connected transactions, such as the continuing Panda LCD Procurement Agreement, Top

Victory on behalf and for the mutual benefit of Panda LCD and other Defendants imported, offered

for sale, advertised, and sold Panda LCD Products including Panda TFT-LCD model nos.

LC215DTCA (incorporated in AOC monitor E2270SWHN) and LC270LG1L01 (incorporated in

AOC monitor 27B1H). Such Panda LCD Products and TPV products were sold in retail stores, both brick and mortar and online, within this judicial district and in Texas. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1369-70 (Fed. Cir. 2008) ("[T]he sale [for purposes of § 271] occurred at the location of the buyer."); *see also Semcon IP Inc. v. Kyocera Corporation*, No. 2:18-cv-00197-JRG, 2019 WL 1979930, at *3 (E.D. Tex. May 3, 2019) (denying accused infringer's motion to dismiss because plaintiff sufficiently plead that purchases of infringing products outside of the United States for importation into and sales to end users in the U.S. may constitute an offer to sell under § 271(a)).

58.     Defendants Panda LCD and CEC Panda have also imported, offered for sale, advertised, and sold, via its associate Sceptre Inc. and business partner/customer Curtis, among other distributors and customers, Sceptre-branded  and RCA-branded products, including, but not limited to, Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50) and Panda LCD model no. SPWBR485C-001 V1.0 (incorporated in RCA TV Model No. RTRU5027-US). Such Sceptre-branded and RCA-branded products were sold in retail stores, both brick and mortar and online, within this judicial district and in Texas.

59.     Upon information and belief, Defendant Top Victory and its parent Defendant TPV, pursuant to the Joint Venture and the continuing Panda LCD Procurement Agreement, control TPV's subsidiaries and/or associates Trend Smart, TPV USA, Top Victory International, TPV Wuhan, TPV Beihai, TPV Fujian, TPV Ningbo, and Envision. Top Victory controls or otherwise directs and authorizes all activities of TPV's subsidiaries and/or associates, including the subsidiaries and associates' using, offering for sale, selling, and/or importing accused products, their components, and/or products containing same that incorporate the fundamental technologies covered by the Asserted Patents. For example, Envision identifies itself on LinkedIn as a "variable

interest entity of TPV." TPV has also identified Envision as an "associate" of TPV in its annual reports. A variable interest entity is "a legal business structure in which an investor has a controlling interest despite not having a majority of voting rights." TPV, therefore, has a controlling interest in its variable interest entity, Envision. Panda LCD and CEC Panda also control the U.S. infringing activities of its associate Sceptre, and their business partner and customer Curtis. These U.S.-based subsidiaries, distributors, business partners, customers, and/or associates of the TPV Group and the CEC Group give Defendants substantially the business advantages that they would have enjoyed if it conducted its business through its own offices or paid agents in the state of Texas.

## THE ASSERTED PATENTS AND TECHNOLOGY

60.     Upon information and belief, a significant portion of operating revenue of the Defendants is derived from the manufacture and sale of TFT-LCD flat panel displays, which are imported into the United States by the TPV Group and ultimately sold to U.S. consumers. For example, the TPV Group's main commodities include TVs and monitors, with 15 million TV units shipped and 26 million monitor units shipped in 2018. *See* 2018 TPV Annual Report, p. 4. In a 2018, TPV Group derived one-quarter of its revenue (about 9.1 billion USD) from sales to the North American market. *Id.* TPV also disclosed that it projected to procurement caps of Panda LCD Products under the Panda LCD Procurement Agreement were expected to increase from 750 million USD to 1.8 billion USD.

61.     The Asserted Patents cover TFT-LCD TVs and monitors, their components, including infringing TFT-LCD panels made by Defendants and incorporated into products of TPV, and processes related to the same (referred to as the "Accused Panels"). Examples of a Defendants' Accused Panels are Panda LCD model no. LC215DTCA (incorporated in AOC E2270SWHN), Panda LCD model no. LC270LG1L01 (incorporated in AOC 27B1H), Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50), model no. SPWBR485C-001 V1.0 (incorporated in RCA TV Model No. RTRU5027-US), and TPV LCD Panel model no. TPM270WF1 (incorporated in  AOC 27B1H). For example, the labels for model no. LC215DTCA and for the TPV product, AOC E2270SWHN, are shown below:





62.     The labels for Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50) are shown below:







63.     Typically, a TFT-LCD has the following structure shown below, comprising of a backlight, a TFT/circuitry layer, a liquid crystal layer, and a color filter:



64.    As shown above, the TFT-LCD panel contains a TFT array substrate and many TFTs. A teardown image below from the Panda TFT-LCD panel model no. LC215DTCA shows that he Accused Panel has scanning lines on the first substrate, orthogonal signal lines, and a TFT near the intersections of scanning and signal lines.



65.    Each TFT is arranged near an intersection of signal and scanning lines.



66.    Each TFT acts as a switch that operates its respective individual pixel using the circuity lines. In that way, the pixels can be turned on and off to create an image on an LCD by allowing or preventing light to pass through. The individual pixels are more apparent when a color filter layer overlays the circuits as shown in the image below for the Panda TFT-LCD panel model no. LC215DTCA.



**Color Filter Layer**

67.    The Accused Panels have an active matrix type liquid crystal display device with two opposing insulating substrates and liquid crystal in-between, as illustrated below in reference to model no. LC215DTCA.



68.    The Accused Panel referenced above also has a pixel electrode and a common electrode with a common longitudinal axis that generate an electric field in the liquid crystal layer parallel to the substrates.



69.     The Accused Panel also has common electrodes, as shown below, extending substantially parallel to the scanning lines and with comb-tooth projections extending toward the scanning lines.



70.     The Accused Panel has pixel electrodes that are each opposite to a common electrode and interposed by an interlayer insulating film.



71.     A first alignment film, shown below, is formed above the pixel electrodes and is interposed by a protective insulating film.



72.     The Accused Panel, shown below, has a second substrate with a black matrix with opening in areas opposite to the pixel electrodes.




73.    35.    Each TFT of the Accused Panel has a source electrode and a drain electrode adjacent to a part of the liquid crystal layer, as shown below.



74.    For in-plane switching devices, the output of the Panda LCD's TFTs creates electric fields that orient the liquid crystals to determine whether light passes through the pixels. When an electric field is created, the liquid crystal molecules orient themselves parallel to the electric field and rotate on the same plane, so that light can pass through a polarizer and create an image on the display.

75.    The Accused Panels also implement methods for reducing flicker, which are covered by the Asserted Patents. For example, in Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50), pixel elements are arranged on a substrate, including pixel electrodes, common electrodes, and TFTs.



76.    In model no. model no. CC495PU1L, the common electrodes are categorized into groups of 3 pixels.



77.    Each group of pixels has a different common electrode drive circuit with a different voltage.



78.     The Asserted Patents also cover Accused Panels, such as TPV LCD panel model

no. TPM270WF1 (incorporated in AOC 27B1H), that utilize a backlight unit.



79.     The backlight unit has a frame-shaped case, as shown below.



80.     The backlight unit of the TPV LCD panel model no. TPM270WF1 has a light guide plate fixed to the case.



81.     The backlight has a light source (e.g., LED strip) on the side of the light guide plate, as shown below.



82.     The backlight of the TPV LCD panel model no. TPM270WF1 has a reflective sheet on the rear of the light guide plate.



83.    The backlight has an EMI protection sheet that covers the flexible board located on the rear surface of the reflective sheet, as shown below.



84.    The backlight has a protective sheet located between the reflective sheet and the flexible board, as shown below.



85.   The flexible board, EMI protection sheet, and protective sheet of the TPV LCD panel model no. TPM270WF1 are adhered together.



## COUNT I

(INFRINGEMENT OF U.S. PATENT NO. 6,404,474)

86.   Plaintiff incorporates paragraphs 1 through 85 herein by reference.

87.   VPV is the assignee of the '474 patent, entitled "Horizontal electric field LCD with increased capacitance between pixel and common electrodes," with ownership of all

substantial rights in the '474 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

88.     The '474 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '474 patent issued from U.S. Patent Application No. 09/357,060.

89.     Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '474 patent in this judicial district and elsewhere in Texas and the United States.

90.     Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/2018060716470100013167990_en.pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

91.     Defendants directly infringe the '474 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '474 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendants deliver the Accused Panels outside of the United States, Defendants do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '474 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly infringe the '474 patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants' selling and offering for sale the Accused Panels directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International— and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Upon information and belief, TPV and TPV's subsidiaries and associates conduct activities that constitutes direct infringement of the '474 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendants are vicariously liable for this infringing conduct of TPV and TPV's subsidiaries and associates (under both the alter ego and agency theories) because, as an example and upon information and belief,

Defendants and TPV and its subsidiaries are essentially the same company (including via the Joint Venture and the Panda LCD Procurement Agreement), and Defendants have the right and ability to control TPV's and TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

92.     For example, Defendants infringe claim 1 of the '474 patent via the Accused Panels such as Panda LCD model no. LC215DTCA (incorporated in AOC monitor E2270SWHN). That Accused Panel includes an "active matrix type liquid crystal display device comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panel provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panel includes two opposing transparent insulating substrates and liquid crystal interposed therebetween, wherein said liquid crystal is controlled by generating an electric field substantially parallel to the liquid crystal layer with a voltage applied between pixel electrodes and common electrodes both disposed on the first of said substrates, said display device further comprising: on said first substrate: a plurality of scanning lines and a plurality of signal lines orthogonal to one another; a thin film transistor provided near each intersection of a scanning line and a signal line; common electrodes extending substantially parallel to said scanning lines and having a plurality of comb-tooth projections extending toward said scanning lines; pixel electrodes formed substantially parallel to the comb-tooth projections in gaps between the adjacent comb-tooth projections of said common electrodes when said substrate is viewed from the normal direction, at least a portion of each pixel electrode being opposite to a common electrode interposed by an interlayer insulating film; an interlayer insulating film disposed between said common electrodes and said pixel electrodes; and a first alignment film formed above said pixel electrodes interposed by a protective insulating film; on said second substrate: a black matrix provided with

openings in areas opposite to each of said pixel electrodes; and a second alignment film; and said active matrix type liquid crystal display device further comprising: accumulated capacitance increasing means for obtaining an accumulated capacitance between said pixel electrode and said common electrodes larger than that generated when said interlayer insulating film is of even thickness and flat structure.

93.     At a minimum, Defendants have known of the '474 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '474 patent since November 12, 2018 when Defendant TPV was provided access to a data room containing claim charts, including for the '474 patent. Furthermore, Defendant Panda FPD was informed of the infringement of the '474 patent by at least one Panda LCD product in a letter sent on January 9, 2020 and received on January 29, 2020.

94.     Upon information and belief, since at least the above-mentioned date when Defendants were on notice of its infringement, Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '474 patent to directly infringe one or more claims of the '474 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '474 patent. Upon information and belief, Defendants intend to cause, and have taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that

promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

95.    Upon information and belief, despite having knowledge of the '474 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '474 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '474 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

96.    VPV has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II

### (INFRINGEMENT OF U.S. PATENT NO. 7,009,673)

97.    Plaintiff incorporates paragraphs 1 through 96 herein by reference.

98.     VPV is the assignee of the '673 patent, entitled "Active matrix liquid crystal display having a thin film transistor over which alignment of liquid crystal molecules does not change," with ownership of all substantial rights in the '673 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

99.     The '673 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '673 patent issued from U.S. Patent Application No. 10/656,138.

100.    Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '673 patent in this judicial district and elsewhere in Texas and the United States.

101.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/20180607164701000013167990_en.pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that

incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

102.   Defendants directly infringe the '673 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '673 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendants deliver the Accused Panels outside of the United States, Defendants do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '673 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly infringe the '673 patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants' selling and offering for sale the Accused Panels directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International— and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Defendants Panda LCD and CEC Panda also directly infringe the '673 patent through its direct involvement in the activities of Sceptre and RCA on behalf of and for the benefit of these Defendants. Such direct infringement includes Defendants Panda LCD and CEC Panda selling and

offering for sale Accused Panels using the Sceptre and RCA brand, respectively, directly to Sceptre and Curtis, and Sceptre and Curtis importing the Accused Panels into the United States for Defendants Panda LCD and CEC Panda. Upon information and belief, TPV, TPV's subsidiaries and associates, Curtis, and Sceptre conduct activities that constitutes direct infringement of the '673 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendants are vicariously liable for this infringing conduct of TPV, TPV's subsidiaries and associates, Curtis, and Sceptre (under both the alter ego and agency theories). As an example and upon information and belief, Defendants and TPV and its subsidiaries are essentially the same company (including via the Joint Venture and the Panda LCD Procurement Agreement), and Defendants have the right and ability to control TPV's and TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

103.    For example, Defendants infringe claim 1 of the '673 patent via the Accused Panels such as Panda TFT-LCD model nos. LC215DTCA (incorporated in AOC E2270SWHN), Panda LCD model no. LC270LG1L01 (incorporated in AOC 27B1H), Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50), and Panda LCD model no. SPWBR485C-001 V1.0 (incorporated in RCA TV Model No. RTRU5027-US). Those Accused Panels include an "active matrix liquid crystal display, comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, those Accused Panels include a pair of substrates with a liquid crystal layer between said substrates; a pixel electrode and a common electrode having a common longitudinal axis and that are arranged and adapted to generate an electric field parallel to said substrates in said liquid crystal layer, said liquid crystal

layer having a non-zero initial alignment angle relative to the common longitudinal axis; and a thin film transistor having a source electrode and a drain electrode adjacent to a first part of said liquid crystal layer, said source and drain electrodes being arranged and adapted so that an electric field generated between said source and drain electrodes is one of substantially parallel to and perpendicular to the non-zero initial alignment angle, whereby an alignment of the first part of said liquid crystal layer does not change when an electric field is generated between said source and drain electrodes.

104.    At a minimum, Defendants have known of the '673 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '673 patent since November 12, 2018 when Defendant TPV was provided access to a data room containing claim charts, including for the '673 patent. Furthermore, Defendant Panda FPD was informed of the infringement of the '673 patent by at least one Panda LCD product in a letter sent on January 9, 2020 and received on January 29, 2020.

105.    Upon information and belief, since at least the above-mentioned date when Defendants were on notice of its infringement, Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '673 patent to directly infringe one or more claims of the '673 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '673 patent. Upon information and belief, Defendants intend to cause, and have taken affirmative steps to induce infringement by

distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

106. Upon information and belief, despite having knowledge of the '673 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '673 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '673 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

107. VPV has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III

### (INFRINGEMENT OF U.S. PATENT NO. 6,078,375)

108.    Plaintiff incorporates paragraphs 1 through 107 herein by reference.

109.    VPV is the assignee of the '375 patent, entitled "Liquid crystal display device with wide viewing angle," with ownership of all substantial rights in the '375 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

110.    The '375 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '375 patent issued from U.S. Patent Application No. 09/154,039.

111.    Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '375 patent in this judicial district and elsewhere in Texas and the United States.

112.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/2018060716470100013167990_en .pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed

and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD

Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that

incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale,

and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

113.    Defendants directly infringe the '375 patent via 35 U.S.C. § 271(a) by making,

offering for sale, selling, and/or importing those Accused Panels, their components, and/or

products containing same that incorporate the fundamental technologies covered by the '375 patent

to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers,

customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants

sell and make Accused Panels outside of the United States, deliver those products to its alter egos,

agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or

consumers in the United States, or in the case that Defendants deliver the Accused Panels outside

of the United States, Defendants do so intending and/or knowing that those panels are destined for

the United States and/or designing those products for sale in the United States, thereby directly

infringing the '375 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell*

*Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly

infringe the '375 patent through its direct involvement in the activities of TPV and TPV's

subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for

the benefit of Defendants. Such direct infringement includes Defendants' selling and offering for

sale the Accused Panels directly to TPV's subsidiaries and associates—Trend Smart, TPV USA,

Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International—

and these subsidiaries and associates importing the Accused Panels into the United States for

Defendants. Defendants Panda LCD and CEC Panda also directly infringe the '375 patent through

its direct involvement in the activities of Sceptre on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants Panda LCD and CEC Panda selling and offering for sale Accused Panels using the Sceptre and RCA brand, respectively, directly to Sceptre and Curtis, and Sceptre and Curtis importing the Accused Panels into the United States for Defendants Panda LCD and CEC Panda. Upon information and belief, TPV, TPV's subsidiaries and associates, and Sceptre conduct activities that constitutes direct infringement of the '375 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendants are vicariously liable for this infringing conduct of TPV, TPV's subsidiaries and associates, and Sceptre (under both the alter ego and agency theories). As an example and upon information and belief, Defendants and TPV and its subsidiaries are essentially the same company (including via the Joint Venture and the Panda LCD Procurement Agreement), and Defendants have the right and ability to control TPV's and TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

114.    For example, Defendants infringe claim 1 of the '375 patent via the Accused Panels such as Panda TFT-LCD model no. LC270LG1L01 (incorporated in AOC 27B1H) and Panda LCD model no. CC495PU1L (incorporated into Sceptre TV model no. H50). Those Accused Panels include a "liquid crystal display device comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include a first substrate having a first principal surface; a first alignment film which is formed on said first principal surface and is subjected to a first aligning treatment; a second substrate having a second principal surface; a second alignment film which is formed on said second principal surface, said second alignment film oppositely disposed to said first alignment film with a predetermined space

left between said first alignment film and said second alignment film, and said second alignment film subjected to a second aligning treatment in the same directional orientation as the first aligning treatment; a liquid crystal layer formed by a plurality of liquid crystal molecules which are interposed and sealed between said first and said second alignment films, a part of said molecules adjacent to said first alignment film having a first pretilt angle falling within a first predetermined range which is not smaller than two degrees from said first alignment film due to the influence of said first aligning treatment, the other part of said molecules adjacent to said second alignment film having a second pretilt angle falling within a second predetermined range which is not smaller than two degrees from said second alignment film due to influence of said second aligning treatment; and field generating means for generating an electric field which is substantially parallel to said first and said second principal surfaces in said predetermined space to make said molecules rotate in accordance with said electric field.

115.     At a minimum, Defendants have known of the '375 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '375 patent since November 12, 2018 when Defendant TPV was provided a presentation listing the patent as infringed by Defendants' products, and on August 27, 2019, when Defendant TPV was provided access to a data room containing claim charts, including for the '375 patent. Furthermore, Defendant Panda FPD was informed of the infringement of the '375 patent by at least one Panda LCD product in a letter sent on January 9, 2020 and received on January 29, 2020.

116.     Upon information and belief, since at least the above-mentioned date when Defendants were on notice of its infringement, Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that

import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '375 patent to directly infringe one or more claims of the '375 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '375 patent. Upon information and belief, Defendants intend to cause, and have taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

117. Upon information and belief, despite having knowledge of the '375 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '375 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '375 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical

infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

118.    VPV has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV

### (INFRINGEMENT OF U.S. PATENT NO. 6,657,699)

119.    Plaintiff incorporates paragraphs 1 through 118 herein by reference.

120.    VPV is the assignee of the '699 patent, entitled "Liquid crystal display unit having pixel electrode encircled with partition wall and process for fabrication thereof," with ownership of all substantial rights in the '699 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

121.    The '699 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '699 patent issued from U.S. Patent Application No. 09/901,034.

122.    Defendants have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '699 patent in this judicial district and elsewhere in Texas and the United States.

123.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018).

Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/2018060716470100013167990_en .pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

124.    Defendants directly infringe the '699 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '699 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendants deliver the Accused Panels outside of the United States, Defendants do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '699 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants directly infringe the '699 patent through its direct involvement in the activities of TPV and TPV's

subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants' selling and offering for sale the Accused Panels directly to TPV's subsidiaries and associates—Trend Smart, TPV USA, Top Victory International, and Envision and Trend Smart, TPV USA, Top Victory International— and these subsidiaries and associates importing the Accused Panels into the United States for Defendants. Upon information and belief, TPV and TPV's subsidiaries and associates conduct activities that constitutes direct infringement of the '699 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendants are vicariously liable for this infringing conduct of TPV and TPV's subsidiaries and associates (under both the alter ego and agency theories). As an example and upon information and belief, Defendants and TPV and its subsidiaries are essentially the same company (including via the Joint Venture and the Panda LCD Procurement Agreement), and Defendants have the right and ability to control TPV's and TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

125.   For example, Defendants infringe claim 20 of the '699 patent via the Accused Panels such as Panda TFT-LCD model no. LC215DTCA (incorporated in AOC monitor E2270SWHN). That Accused Panel includes an "in-plane switching type liquid crystal display panel having a plurality of pixel areas, the panel comprising" each of the limitations of claim 20. The technology discussion above and the example Accused Panel provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panel includes liquid crystals between a pair of substrate structures and comprising optical elements within each of said plurality of pixel areas; a common electrode on one of said substrate structures for each pixel area; a pixel electrode for each pixel area offset from said common electrode on said one of said

substrate structures, wherein said common electrode and said pixel electrode define said pixel area;

a switching transistor on said one of said substrate structures and having a source connected to

said pixel electrode, a data line extending outside a periphery of said pixel area and a gate electrode

extending outside of said periphery; and a partition wall structure formed on said common

electrode of at least one of said pixel areas for separating said optical elements from the remaining

liquid crystal.

126.    Defendants further infringe the '699 patent via 35 U.S.C. § 271(g) by selling,

offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing

same, that are made by a process covered by the '699 patent. Upon information and belief, the

infringing TFT-LCD panels, their components, and/or products containing same are not materially

changed by subsequent processes, and they are neither trivial nor nonessential components of

another product.

127.    At a minimum, Defendants have known of the '699 patent at least as early as the

filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV

Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '699 patent since November

12, 2018 when Defendant TPV was provided access to a data room containing claim charts,

including for the '699 patent.

128.    Upon information and belief, since at least the above-mentioned date when

Defendants were on notice of its infringement, Defendants have actively induced, under U.S.C. §

271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that

import, purchase, or sell the Accused Panels that include or are made using all of the limitations

of one or more claims of the '699 patent to directly infringe one or more claims of the '699 patent

by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice

provided on the above-mentioned date, Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '699 patent. Upon information and belief, Defendants intend to cause, and have taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. *See, e.g.*, 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

129. Upon information and belief, despite having knowledge of the '699 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '699 patent, Defendants have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. Defendants' infringing activities relative to the '699 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

130.    VPV has been damaged as a result of Defendants' infringing conduct described in this Count. Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V

### (INFRINGEMENT OF U.S. PATENT NO. 6,646,691)

131.    Plaintiff incorporates paragraphs 1 through 130 herein by reference.

132.    VPV is the assignee of the '691 patent, entitled "Active-matrix In-plane Switching Mode LCD Panel Having Multiple Common Electrode Voltage Sources," with ownership of all substantial rights in the '691 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

133.    The '691 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '691 patent issued from U.S. Patent Application No. 09/626,114.

134.    Defendants Panda LCD and CEC Panda have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '691 patent in this judicial district and elsewhere in Texas and the United States.

135.    Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint*

*Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010013167990_en.pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

136.    Defendants Panda LCD and CEC Panda directly infringe the '691 patent via 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '691 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that Defendants deliver the Accused Panels outside of the United States, Defendants do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '691 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Defendants Panda LCD and CEC Panda also directly infringe the '691 patent through its direct involvement in the activities of Sceptre on behalf of and for the benefit of Defendants. Such direct infringement includes Defendants Panda LCD and CEC Panda selling and offering for sale

Accused Panels using the Sceptre brand, respectively, directly to Sceptre, and Sceptre importing the Accused Panels into the United States for Defendants Panda LCD and CEC Panda. Upon information and belief, U.S.-based Sceptre conducts activities that constitutes direct infringement of the '691 patent under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels. Defendants Panda LCD and CEC Panda are vicariously liable for this infringing conduct of Sceptre (under both the alter ego and agency theories) because, as an example and upon information and belief, Defendants Panda LCD and CEC Panda have the right and ability to control Sceptre's infringing acts and receive a direct financial benefit from Sceptre's infringement.

137.    For example, Defendants Panda LCD and CEC Panda infringe claim 7 of the '691 patent via the Accused Panels such as CC495PU1L (incorporated into Sceptre TV model no. H50). Those Accused Panels implement each limitation of the "method of reducing flicker in a liquid crystal display (LCD) panel, said LCD panel having a plurality of pixel elements arranged in a matrix on said first substrate, each said pixel element including a thin film transistor (TFT), a pixel electrode and a common electrode" of claim 7. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include categorizing said common electrodes of said pixel element into groups, based upon a capacitance between said pixel electrode and said common electrode and applying a common electrode voltage to each said group, each said group having a different voltage level for said common electrode voltage.

138.    Defendants Panda LCD and CEC Panda further infringe the '691 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '691 patent. Upon

information and belief, the infringing TFT-LCD panels, their components, and/or products containing same are not materially changed by subsequent processes, and they are neither trivial nor nonessential components of another product.

139.    At a minimum, Defendants Panda LCD and CEC Panda and the other Defendants have known of the '691 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '691 patent since November 12, 2018 when Defendant TPV was provided a presentation listing the '691 patent as infringed by Defendants' products.

140.    Upon information and belief, since at least the above-mentioned date when Defendants Panda LCD and CEC Panda were on notice of its infringement, these Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '691 patent to directly infringe one or more claims of the '691 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, these Defendants do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '691 patent. Upon information and belief, Defendants Panda LCD and CEC Panda intend to cause, and have taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to

purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States.

141.   Upon information and belief, despite having knowledge of the '691 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '691 patent, Defendants Panda LCD and CEC Panda have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. These Defendants' infringing activities relative to the '691 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

142.   VPV has been damaged as a result of Defendants Panda LCD and CEC Panda's infringing conduct described in this Count. These Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for these Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI

### (INFRINGEMENT OF U.S. PATENT NO. 7,446,825)

143.   Plaintiff incorporates paragraphs 1 through 142 herein by reference.

144.   VPV is the assignee of the '825 patent, entitled "Backlight Unit, Display Device Provided With the Backlight Unit, and Method of Manufacturing the Display Device," with ownership of all substantial rights in the '825 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

145.     The '825 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '825 patent issued from U.S. Patent Application No. 11/490,119.

146.     Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have and continue to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '825 patent in this judicial district and elsewhere in Texas and the United States.

147.     Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operate as part of the TPV Group to design, manufacture, import, distribute, and sell TVs and monitors incorporating LCD panels and displays. *See, e.g.*, 2018 TPV Annual Report, pp. 8-11 (describing the Group's operations in 2018). Defendant Panda LCD is "principally engaged in the manufacture of LCD panels and displays." *See Discloseable and Connected Transaction in Relation to the Disposal of Interest in Joint Venture*, TPV TECHNOLOGY LIMITED, June 8, 2018, pp. 7-10, http://store.todayir.com/todayirattachment_hk/tpv/attachment/201806071647010013167990_en .pdf. Defendants in the CEC Group (Panda LCD and CEC Panda) are engaged in the "new display industry" covering "display devices…trading and services." *Id*. Defendant Panda FPD was formed and operated as the Joint Venture with the TPV Group to "manufacture and sell" Panda LCD Products in the U.S. market for the CEC Group. *Id*. Panda LCD Products, including products that incorporate LCD panels supplied by the TPV Group, are imported, distributed, offered for sale, and sold in the U.S. under the AOC, Envision, Sceptre, and RCA brands.

148.     Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '825 patent via

35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing those Accused Panels, their components, and/or products containing same that incorporate the fundamental technologies covered by the '825 patent to, for example, alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers. Furthermore, upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group sell and make Accused Panels outside of the United States, deliver those products to its alter egos, agents, intermediaries, connected persons, distributors, importers, customers, subsidiaries, and/or consumers in the United States, or in the case that they deliver the Accused Panels outside of the United States they do so intending and/or knowing that those panels are destined for the United States and/or designing those products for sale in the United States, thereby directly infringing the '825 patent. *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013). Furthermore, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group directly infringe the '825 patent through its direct involvement in the activities of TPV and TPV's subsidiaries Trend Smart, TPV USA, Top Victory International, and Envision on behalf of and for the benefit of these Defendants. Such direct infringement includes Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo selling and offering for sale Accused Panels, respectively, directly to TPV's subsidiaries and associates Trend Smart, TPV USA, Top Victory International, and Envision, and these subsidiaries and associates importing the Accused Panels into the United States for Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo. Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group are

vicariously liable for this infringing conduct of TPV's subsidiaries and associates (under both the alter ego and agency theories) because, as an example and upon information and belief, TPV and its subsidiaries and associates are essentially the same company and these Defendants have the right and ability to control TPV associates' and subsidiaries' infringing acts and receive a direct financial benefit from TPV's and TPV subsidiaries' infringement.

149.    For example, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group infringe claim 1 of the '825 patent via the Accused Panels such as AOC monitors, such as model no. 27B1H which utilizes TPV LCD panel TPM270WF1. Those Accused Panels include an "backlight unit, comprising" each of the limitations of claim 1. The technology discussion above and the example Accused Panels provide context for Plaintiff's allegations that each of those limitations are met. For example, the Accused Panels include a case having a frame shape; a light guide plate fixed to the case; a light source located on the side of the light guide plate; a reflective sheet located on the rear of the light guide plate; an EMI protection sheet for covering at least a flexible board located on the rear surface of the reflective sheet; and a protective sheet located between the reflective sheet and the flexible board, for preventing deformation of the reflective sheet, wherein the EMI protection sheet is bonded to the flexible board and the protective sheet, whereby the flexible board is fixed to the protective sheet.

150.    Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo further infringe the '825 patent via 35 U.S.C. § 271(g) by selling, offering to sell, and/or importing TFT-LCD panels, their components, and/or products containing same, that are made by a process covered by the '825 patent. Upon information and belief, the infringing TFT-LCD panels, their components, and/or products containing same are not materially changed

by subsequent processes, and they are neither trivial nor nonessential components of another product.

151.    At a minimum, Defendants have known of the '825 patent at least as early as the filing date of the complaint. In addition, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have known of the '825 patent since November 12, 2018 when Defendant TPV was provided a presentation listing the patent as infringed by Defendants' products and on August 27, 2019, when Defendant TPV was provided access to a data room containing claim charts, including for the '825 patent.

152.    Upon information and belief, since at least the above-mentioned date when Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo were on notice of its infringement, these Defendants have actively induced, under U.S.C. § 271(b), distributors, customers, subsidiaries, connected persons, importers, and/or consumers that import, purchase, or sell the Accused Panels that include or are made using all of the limitations of one or more claims of the '825 patent to directly infringe one or more claims of the '825 patent by using, offering for sale, selling, and/or importing the Accused Panels. Since at least the notice provided on the above-mentioned date, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group do so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '825 patent. Upon information and belief, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo operating as part of the TPV Group intend to cause, and has taken affirmative steps to induce infringement by distributors, importers (including inducement to import in violation of § 271(g)), customers, subsidiaries, connected persons, and/or consumers by, inter alia, creating advertisements that promote the

infringing use of the Accused Panels, creating established distribution channels for the Accused Panels into and within the United States, manufacturing the Accused Panels in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, and/or providing technical support, replacement parts, or services for these products to these purchasers in the United States. See, e.g., 2018 TPV Annual Report, pp. 131-132 (listing its U.S. sales subsidiaries Trend Smart America and TPV International (USA), Inc. as subsidiaries responsible for sales, trading, and distribution of computer monitors and flat TVs in the U.S. as part of a global sales network of subsidiaries).

153.   Upon information and belief, despite having knowledge of the '825 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '825 patent, Defendants TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement. These Defendants' infringing activities relative to the '825 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

154.   VPV has been damaged as a result of Defendants' (TPV, Top Victory, Top Victory Int'l, TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo) infringing conduct described in this Count. These Defendants are, thus, liable to VPV in an amount that adequately compensates VPV for these Defendants' infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### **JOINDER OF PARTIES**

155.     VPV incorporates paragraphs 1 through 154 herein by reference.

156.     The alleged infringements set forth in Counts I through VI arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the importing, distributing, making, using, offering for sale, and/or selling of the Accused Products made the subject of Counts I through VI.

157.     Questions of fact common to all Defendants will arise in this action including, for example, infringement by, or through use of, the Accused Products.

158.     Thus, joinder of Panda LCD, CEC Panda, Panda FPD, TPV, Top Victory, and Top Victory Int'l TPV Wuhan, TPV Beihai, TPV Fujian, and TPV Ningbo is proper in this litigation pursuant to 35 U.S.C. § 299(a).

### INJUNCTIVE RELIEF

159.     Plaintiff seeks preliminary and permanent injunctions as a result of Defendants' infringement of the Asserted Patents. Plaintiff is likely to succeed in showing that Defendants infringe the Asserted Patents. Because of that infringement, Plaintiff has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury. For example, if Plaintiff must enforce a judgment against Defendants in PRC, Plaintiff will face a historically challenging burden in persuading courts in these jurisdictions to enforce a judgment from a U.S. court, likely preventing Plaintiff from obtaining any monetary damages from Defendants. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted; and the public interest would not be disserved by a permanent or preliminary injunction.

### CONCLUSION

160.   Plaintiff VPV is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

161.   Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

162.   Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

163.   Plaintiff VPV respectfully requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

1.   A judgment that Defendants have infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

2.   A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendants;

3.   A preliminary and permanent injunction against Defendants, its subsidiaries, or anyone acting on its behalf from making, using, selling, offering to sell, or importing any products that infringe the Asserted Patents, and any other injunctive relief the Court deems just and equitable;

4.   A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

5.   A judgment and order requiring Defendants to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

6.   A judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

7.   Such other and further relief as the Court deems just and equitable.

Dated: April 1, 2020                    Respectfully submitted,

/s/Patrick J. Conroy
Patrick J. Conroy
Texas Bar No. 24012448
T. William Kennedy Jr.
Texas Bar No. 24055771
Terry A. Saad
Texas Bar No. 24066015

**Bragalone Conroy PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
pconroy@bcpc-law.com
bkennedy@bcpc-law.com
tsaad@bcpc-law.com
**ATTORNEYS FOR PLAINTIFF VISTA
PEAK VENTURES, LLC**